# UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

## No. 23-2598

**CORECIVIC, INC.,**
*Plaintiff-Appellee*,

**v.**

**GOVERNOR OF NEW JERSEY, et al.,**
*Defendants-Appellants*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY (No. 3:23-cv-00967)

## BRIEF FOR *AMICUS CURIAE*
## IMMIGRATION REFORM LAW INSTITUTE
## IN SUPPORT OF PLAINTIFF-APPELLEE

John M. Miano
IMMIGRATION REFORM LAW INSTITUTE
25 Massachusetts Ave NE, Suite 335
Washington, DC 20001
202.232.5590
202.464.3590

*Attorney for amicus curiae Immigration
Reform Law Institute*

# CORPORATE DISCLOSURE STATEMENT

Pursuant Fed. R. App. P. 26.1 and Third Circuit L.A.R. 26.1, *amicus curiae* Immigration Reform Law Institute makes the following disclosures:

1) For non-governmental corporate parties please list all parent corporations: None.

2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock: None.

3) The following entity has an interest in the outcome of this case: Immigration Reform Law Institute.

Dated: March 20, 2024   Respectfully submitted,

     /s/ John M. Miano

     John M. Miano
     Immigration Reform Law Institute
     25 Massachusetts Ave NW, Suite 335
     Washington, DC 20001
     202.232.5590
     202.464.3590

     *Attorney for amicus curiae*

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ....................................................... ii

TABLE OF CONTENTS ................................................................................ iii

TABLE OF AUTHORITIES ......................................................................... iv

IDENTITY AND INTEREST OF AMICUS CURIAE .............................................. 1

SUMMARY OF ARGUMENT ........................................................................ 2

ARGUMENT ............................................................................................ 4

    I.    AB 5207 VIOLATES INTERGOVERNMENTAL IMMUNITY. ................. 4

    II.   AB 5207 IS PREEMPTED ................................................................. 7

    III.  NO PRESUMPTION AGAINST PREEMPTION SHOULD APPLY ......... 10

CONCLUSION ......................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. United States*, 567 U.S. 387 (2012)......................................... 7, 8, 12, 13

*Boutilier v. Immigration and Naturalization Service*, 387 U.S. 118 (1967) .............7

*Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341 (2001)..............................12

*City of New York v. United States*, 179 F.3d 29 (2d Cir. 1999)................................9

*Clark v. Martinez*, 543 U.S. 371 (2005) ..................................................................2

*Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363 (2000)...........................9, 11

*DeCanas v. Bica*, 424 U.S. 351 (1976)...................................................................13

*Farina v. Nokia, Inc.*, 625 F.3d 97 (3d Cir. 2010)..................................................12

*Farmers and Mechanics Sav. Bank of Minneapolis v. Minnesota*, 232 U.S. 516 (1914)...................................................................................................................5

*Fiallo v. Bell*, 430 U.S. 787 (1977).........................................................................12

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992) .................................9

*Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000)............................................12

*Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022) (*en banc*) ............... 4, 7, 10

*Hines v. Davidowitz*, 312 U.S. 52 (1941) ...............................................................10

*Holk v. Snapple Bev. Corp.*, 575 F. 3d 329 (3d Cir. 2009)........................................8

*Kleindienst v. Mandel*, 408 U.S. 753 (1972) ............................................................7

*Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187 (1956) ...............................................6

*Lozano v. City of Hazelton*, 620 F.3d 170 (3d Cir. 2010), *vacated and remanded on other grounds by City of Hazelton v. Lozano*, 563 U.S. 1030 (2011)....................8

*Mayo v. United States*, 319 U.S. 441 (1943) ........................................................5

*McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819) .........................................5

*Medtronic, Inc. v. Lohr*, 518 U.S. 470 (1996) .....................................................10

*North Dakota v. United States*, 495 U.S. 423 (1990) ..........................................5, 6

*Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218 (1947) ...........................................11

*Shaughnessy v. Mezei*, 345 U.S. 206 (1953)........................................................12

*Toll v. Moreno*, 458 U.S. 1 (1982).....................................................................13

*United States v. County of Fresno*, 429 U.S. 452 (1977) .........................................5

*United States v. Locke*, 529 U.S. 89 (2000).........................................................11

*United States v. Washington*, 142 S. Ct. 1976 (2022) .................................... 4, 5, 6

*Washington v. United States*, 460 U.S. 536 (1983) ..............................................5, 6

*Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170 (3d Cir. 2013)..................................8

**Statutes**

6 U.S.C. § 557 ...............................................................................................2

8 U.S.C. § 1101..............................................................................................2

8 U.S.C. § 1103(a)(11)(B) .................................................................................7

8 U.S.C. § 1231..............................................................................................7

8 U.S.C. § 1231(g)(1).......................................................................................2

8 U.S.C. § 1231(g)(2).................................................................... 2, 7, 9

N.J. Rev. Stat. § 30:4-8.15.d ................................................................3

N.J. Rev. Stat. § 30:4-8.16 ...................................................................9

N.J. Rev. Stat. § 30:4-8.16c .................................................................3

N.J. Stat. § 30:4-91.10..........................................................................3

## Other Authorities

New Jersey Legislature, https://www.njleg.state.nj.us/bill-search/2020/A5207.......2

## Regulations

48 C.F.R. § 3017.204-90........................................................................2

## Constitutional Provisions

U.S. Const. art. VI, cl. 2 ......................................................................4

<u>**IDENTITY AND INTEREST OF *AMICUS CURIAE*[1]**</u>

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. For more than twenty years the Board of Immigration Appeals has solicited supplementary briefing, drafted by IRLI staff, from the Federation for American Immigration Reform, of which IRLI is a supporting organization. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases, including *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); *United States v. Texas*, 579 U.S. 547 (2016); *Ariz. Dream Act Coalition v. Brewer*, 855 F.3d 9857 (9th Cir. 2017); *Wash. All. Tech Workers v. U.S. Dep't of Homeland Security*, 50 F.4th 164 (D.C. Cir. 2022); and *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016). For these reasons, IRLI has a direct interest in the issues here.

---

[1] All parties have consented in writing to the filing of IRLI's *amicus curiae* brief. No counsel for a party in this case authored this brief in whole or in part, and no such counsel or party made a monetary contribution intended to fund the preparation of this brief. No person other than *amicus curiae*, its members, or its counsel made a monetary contribution to the preparation or submission of this brief.

# SUMMARY OF ARGUMENT

The Immigration and Nationality Act, 8 U.S.C. §§ 1101 *et seq.* ("INA"), provides that the Department of Homeland Security ("DHS") "shall arrange for appropriate places of detention for aliens detained pending removal or a decision on removal." 8 U.S.C. § 1231(g)(1).[2] To accomplish these detention requirements, the INA authorizes the expenditure of funds for detention facilities and requires DHS to consider "the availability for purchase or lease of any existing prison, jail, detention center, or other comparable facility suitable for such use." *Id.* § 1231(g)(2). U.S. Immigration and Customs Enforcement ("ICE"), a constituent agency of DHS, is authorized to "enter into contracts of up to fifteen years' duration for detention or incarceration space or facilities, including related services." 48 C.F.R. § 3017.204-90. In sum, the INA and its implementing regulations contemplate the use of leased detention facilities to meet DHS's obligation for detention and removal of aliens under the INA. Plaintiff-Appellee CoreCivic, Inc. ("CoreCivic"), operates such a facility in New Jersey.

The law at issue in this case, AB 5207, was enacted in August 2021. *See* New Jersey Legislature, https://www.njleg.state.nj.us/bill-search/2020/A5207. AB 5207 prohibits both public and private entities in New Jersey from entering, renewing, or

---

[2] Although the INA refers to the "Attorney General," *id.*, those powers were transferred to DHS. *See* 6 U.S.C. § 557; *Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

extending contracts for immigration detention. CoreCivic has operated the Elizabeth Detention Center ("EDC") under such a contract with ICE since 2005. Plaintiff-Appellee's Opening Brief, Doc. 60 at 16. Despite a provision that the statute is not to be construed "to prohibit, or in any way restrict, any action where the prohibition or restriction would be contrary to federal law, the United States Constitution, or the New Jersey Constitution," N.J. Rev. Stat. § 30:4-8.16c, the explicit purpose of AB 5207 is to prevent ICE from contracting for immigration detention services in the State of New Jersey. N.J. Rev. Stat. § 30:4-8.15.d ("[T]he intent of the Legislature [is] to prevent new, expanded or renewed agreements to detain people for civil immigration purposes."). New Jersey does, however, allow for detention agreements with private entities to house *state* detainees. *See* N.J. Stat. § 30:4-91.10 ("[T]he Commissioner of Corrections may authorize the confinement of eligible inmates in private facilities."). The combination of this allowance and the ban on private detention of aliens discriminates against the federal government in violation of the intergovernmental immunity. Furthermore, AB 5207's ban on private immigration detention leaves ICE without the avenue it has deemed best to carry out its detention objectives, and thus directly impedes the purposes of federal law.

## ARGUMENT

AB 5207 is unconstitutional under the Supremacy Clause of the U.S. Constitution[3] because it violates both intergovernmental immunity and creates an obstacle to the full purposes and objectives of Congress laid out in the INA. Additionally, no presumption against preemption should apply.

The Ninth Circuit recently considered and rejected a similar law in California that prohibited private detention facilities in that state. The *en banc* court held that the law violated the Supremacy Clause because it "would override the federal government's decision, pursuant to discretion conferred by Congress, to use private contractors to run its immigration detention facilities. . . . Whether analyzed under intergovernmental immunity or preemption, California cannot exert this level of control over the federal government's detention operations." *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 750-51 (9th Cir. 2022) (*en banc*). The court below correctly followed the Ninth Circuit's lead and enjoined AB 5207.

## I.     AB 5207 VIOLATES INTERGOVERNMENTAL IMMUNITY.

The Supremacy Clause of the U.S. Constitution "prohibit[s] States from interfering with or controlling the operations of the Federal Government." *United*

---

[3] "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2.

*States v. Washington*, 142 S. Ct. 1976, 1984 (2022). *See also McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 332 (1819) ("[T]he States have no power, by taxation or otherwise, to retard, impede, burden, or in any manner control, the operations of the constitutional laws enacted by Congress to carry into execution the powers vested in the national government."); *Farmers and Mechanics Sav. Bank of Minneapolis v. Minnesota*, 232 U.S. 516, 521 (1914) (explaining that the Constitution protects "the entire independence of the General Government from any control by the respective States.")

Thus, under this doctrine, "the activities of the Federal Government are free from regulation by any state." *Mayo v. United States*, 319 U.S. 441, 445 (1943). Accordingly, a state law is invalid if it directly regulates the federal government or if it imposes burdens on federal interests that are not equally imposed on similarly situated constituents. *Washington, supra; United States v. County of Fresno*, 429 U.S. 452, 462-64 (1977). As the Supreme Court explained, "the question whether a state regulation discriminates against the Federal Government cannot be viewed in isolation. Rather, the entire regulatory system should be analyzed to determine whether it is discriminatory 'with regard to the economic burdens that result.'" *North Dakota v. United States*, 495 U.S. 423, 435 (1990) (quoting *Washington v. United States*, 460 U.S. 536, 544 (1983)). By restricting detention agreements for immigration detention while permitting the state to continue to enter such

agreements for state purposes, AB 5207 impermissibly discriminates against federal interests. Appellants' attempt to justify the prohibition on immigration detention by arguing that any private detention facilities used by the state are not-for-profit, Corr. Br. Of App., Doc 23 at 15, does not cure the discriminatory impact of AB 5207.

Intergovernmental immunity necessarily extends to those parties the government works with to enforce and administer federal law. *See North Dakota*, 495 U.S. at 435 (explaining that a state law is invalid "if it regulates the United States directly or discriminates against the Federal Government or those with whom it deals."). Indeed, the Supreme Court has recognized the right of the federal government to conduct operations, including with outside actors, without interference from the states. *Washington*, 142 S. Ct. at 1980 (striking down a state law because "it singl[ed] out the Federal Government for unfavorable treatment" by applying only to persons, including federal contractors, engaged in work for the United States."); *Washington v. United States*, 460 U.S. 536, 544-45 (1983) ("The State . . . discriminate[s] against the Federal Government and those with whom it deals [when] it treats someone else better than it treats them."); *Leslie Miller, Inc. v. Arkansas*, 352 U.S. 187, 190 (1956) (striking down an Arkansas law on the basis that "[s]ubjecting a federal contractor to the Arkansas contractor license requirements would give the State's licensing board a virtual power of review over the federal determination of responsibility and would thus frustrate the expressed

6

federal policy of selecting the lowest responsible bidder."); *Geo Grp., Inc.*, 50 F.4th at 761 (striking down a law banning private detention centers because it "prohibit[ed] ICE from exercising its discretion to arrange for immigration detention in the privately run facilities it has deemed appropriate.") Because, with AB 5207, New Jersey precludes the federal government from contracting for private detention facilities but may still enter such contracts itself, AB 5207 discriminates against federal contractors such as Plaintiff-Appellee in violation of the Supremacy Clause.

## II.    AB 5207 IS PREEMPTED

The "broad, undoubted power over the subject of immigration and the status of aliens[,]" *Arizona v. United States*, 567 U.S. 387, 394 (2012), has been repeatedly recognized by the Supreme Court. Indeed, the Supreme Court has, "without exception . . . sustained Congress' 'plenary power to make rules for the admission of aliens and to exclude those who possess those characteristics which Congress has forbidden.'" *Kleindienst v. Mandel*, 408 U.S. 753, 766 (1972) (quoting *Boutilier v. Immigration and Naturalization Service*, 387 U.S. 118, 123 (1967)).

The enactment of the INA reflects the manifest intent of Congress that those rules include the detention of aliens and that such detention would require cooperation between state, local, and private entities. *See, e.g,* 8 U.S.C. § 1231 (requiring the detention of removable aliens); 8 U.S.C. § 1103(a)(11)(B) (granting DHS the authority to work with state and local governments regarding alien

7

detention); 8 U.S.C. § 1231(g)(2) (requiring ICE to consider private detention before building or updating federal facilities). In effect, AB 5207 nullifies these provisions and essentially bars civil immigration detention in the state of New Jersey. The court below properly enjoined AB 5207 because it presented a direct obstacle to these purposes. This Court should uphold that injunction.

"The Supremacy Clause provides a clear rule . . . Under this principle, Congress has the power to pre-empt state law." *Arizona*, 567 U.S. at 399. "[P]re-emption doctrine is a necessary outgrowth of the Supremacy Clause. It ensures that when Congress either expresses or implies an intent to preclude certain state or local legislation, offending enactments cannot stand." *Lozano v. City of Hazelton*, 620 F.3d 170, 203 (3d Cir. 2010), *vacated and remanded on other grounds by City of Hazelton v. Lozano*, 563 U.S. 1030 (2011).

"Preemption can be express or implied–either way, the effect is the same: preemption renders the relevant state law invalid." *Zimmerman v. Norfolk S. Corp.*, 706 F.3d 170, 176 (3d Cir. 2013). Conflict preemption can occur in two ways: "when it is impossible for a private party to comply with both state and federal requirements[,]" and "when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Holk v. Snapple Bev. Corp.*, 575 F. 3d 329, 339 (3d Cir. 2009) (citations omitted). The judgment of courts about what constitutes an unconstitutional impediment to federal law is "informed

by examining the federal statute as a whole and identifying its purpose and intended effects." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 374 n.8 (2000). Thus, a court's "ultimate task . . . is to determine whether the state regulation is consistent with the structure and purpose of the statute as a whole." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992).

The doctrine of obstacle preemption stems from the necessity of cooperation among dual sovereigns in our federal system. As the Second Circuit has explained:

> A system of dual sovereigns cannot work without informed, extensive, and cooperative interaction of a voluntary nature between sovereign systems for the mutual benefit of each system. The operation of dual sovereigns thus involves mutual dependencies as well as differing political and policy goals. Without the Constitution, each sovereign could, to a degree, hold the other hostage by selectively withholding voluntary cooperation as to a particular program. The potential for deadlock thus inheres in dual sovereignties, but the Constitution has resolved that problem with the Supremacy Clause, which bars states from taking actions that frustrate federal laws and regulatory schemes.

*City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999) (internal citations omitted).

AB 5207 is a direct and purposeful obstacle to the federal government's ability to administer and enforce federal immigration law in New Jersey. The INA explicitly requires ICE to consider private detention before building or updating federal facilities. 8 U.S.C. § 1231(g)(2). Yet AB 5207 was enacted with the specific purpose

of ending private immigration detention in the state, N.J. Rev. Stat. § 30:4-8.16, a purpose that explicitly conflicts with the federal government's mission as contemplated by the INA.

As was the case in California, "ICE has decided to rely almost exclusively on privately owned and operated facilities," *Geo Grp., Inc.*, 50 F.4th at 750, for immigration detention in New Jersey. Accordingly, AB 5207

> would give [New Jersey] the power to control ICE's immigration detention operations in the state by preventing ICE from hiring the personnel of its choice. Given the fluctuating demand, Congress's preference for existing facilities, *see* 8 U.S.C. § 1231(g)(1)–(2), . . . ICE has determined that privately run facilities are the most "appropriate" for [New Jersey]. 8 U.S.C. § 1231(g)(1). AB [5207] would take away that choice.

*Geo Grp., Inc.*, 50 F.4th at 757. AB 5207 makes it impossible for federal immigration officials to detain aliens as required by the INA in the way preferred by the INA and chosen by ICE. It thus "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941), and as such is preempted.

## III.   NO PRESUMPTION AGAINST PREEMPTION SHOULD APPLY

The Supreme Court, based on federalism balancing concerns, has employed a presumption against preemption in some cases. *See, e.g., Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996) ("[B]ecause the States are independent sovereigns in our federal system, we have long presumed that Congress does not cavalierly pre-empt

state-law causes of action."). Any such presumption, however, is easily overcome in this case.

First, in a leading case setting forth the presumption against preemption, the Supreme Court held that the presumption is *ipso facto* surmounted in cases of obstacle preemption. *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947) ("We start with the presumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress. Such a purpose may be evidenced in several ways . . . [For example] the state policy may produce a result inconsistent with the objective of the federal statute."). *See also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 374 n.8 (2000) ("Assuming, *arguendo*, that some presumption against preemption is appropriate, we conclude, based on our analysis below, that the state Act presents a sufficient obstacle to the full accomplishment of Congress's objectives under the Federal Act to find it preempted."). As explained, AB 5207 stands as a direct obstacle to the purposes and objectives of Congress regarding alien detention.

Second, "an assumption of non-preemption is not triggered when the State regulates in an area where there has been a history of significant federal presence." *United States v. Locke*, 529 U.S. 89, 107-08 (2000) (quoting *Rice*, *supra*). *See also id*. (declining to apply the presumption against preemption because federal law made clear that "only the Federal Government may regulate the design, construction,

alteration, repair, maintenance, operation, equipping, personnel qualification, and manning of tankers."); *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 864 (2000) (holding that no presumption against preemption applied because the allowance of common-law no-airbag suits like the one the plaintiff had brought "stood has an obstacle to the accomplishment of a Federal Motor Vehicle Safety Standard"); *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 347-48 (2001) (finding that the presumption did not apply to fraud on the Federal Drug Administration because such fraud is not an area of traditional state regulation); *Farina v. Nokia, Inc.*, 625 F.3d 97, 116 (3d Cir. 2010) ("The presumption applies with particular force in fields within the police power of the state, but does not apply where state regulation has traditionally been absent."). Thus, when New Jersey purports to regulate immigration detention, it must show a history of action in that field before claiming any presumption against preemption. But the detention and removal of aliens has always been in the purview not of the states but of the federal government. *See, e.g., Fiallo v. Bell*, 430 U.S. 787, 792 (1977) ("Our cases 'have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'") (quoting *Shaughnessy v. Mezei*, 345 U.S. 206, 210 (1953)); *Arizona*, 567 U.S. at 394 (recognizing that the federal government "has broad, undoubted power over the

subject of immigration and the status of aliens") (citing *Toll v. Moreno*, 458 U.S. 1, 10 (1982)).

Accordingly, the presumption against preemption does not protect state laws about immigration, a field in which "Congress has legislated . . . from the earliest days of the Republic, creating an extensive federal statutory and regulatory scheme." *Id*. In short, the "[p]ower to regulate immigration is unquestionably exclusively a federal power." *DeCanas v. Bica*, 424 U.S. 351, 354 (1976). There is no traditional state power to decide this question, and certainly not to decide it inconsistently with how the federal government has decided it. Because New Jersey has intruded into immigration–an area of exclusive federal power–it can enjoy no presumption that its law is not preempted.

## **<u>CONCLUSION</u>**

For the foregoing reasons, the injunction granted by the district court should be upheld.

DATED: March 20, 2024              Respectfully submitted,

 /s/ John M. Miano

John M. Miano, N.J. Bar No. 020012005

Christopher J. Hajec
Gina M. D'Andrea
Immigration Reform Law Institute
25 Massachusetts Ave NW, Suite 335
Washington, DC 20001
202.232.5590

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel certifies compliance of the accompanying brief with the following requirements of the Federal Rules of Appellate Procedure and the Local Rules of this Court.

1. Pursuant to Third Circuit L.A.R. 46.1(a), counsel for *amicus curiae* is a member of this Court's bar.

2. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 29(c)(5) because it contains 3,195 words, including footnotes but excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

3. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

4. Pursuant to Third Circuit L.A.R. 31.1(c),

   a. the electronic submission of this document is an exact copy of the corresponding paper document to be filed with the Court; and

   b. the document has been scanned for viruses with Norton 360, a commercial virus-scanning program, and is free of viruses.

DATED: March 20, 2024            Respectfully submitted,

 /s/ John M. Miano

John M. Miano, N.J. Bar No. 020012005
Immigration Reform Law Institute
25 Massachusetts Ave NW, Suite 335
Washington, DC 20001
202.232.5590

*Counsel for amicus curiae*

## CERTIFICATE OF SERVICE

I certify that on March 20, 2024, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF system, by which service was effected on the parties in this case.

 /s/ John M. Miano   

# CERTIFICATION OF BAR MEMBERSHIP

Pursuant to Third Circuit L.A.R. 46.1(e), I, John M. Miano, certify under penalty of perjury that I am a member in good standing of the bar of the United States Court of Appeals for the Third Circuit.

Dated: March 20, 2024          /s/ John M. Miano